Filed 9/22/25  P. v. Kirkwood CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>ANTHONY KAREEM KIRKWOOD,<br>    Defendant and Appellant. | A167095<br><br>(Contra Costa County<br>Super. Ct. No. 05002100618) |

This is an appeal from final judgment after defendant Anthony Kareem Kirkwood was convicted of carjacking, unlawful possession of a firearm, and recklessly fleeing an officer in a motor vehicle.  After the triers of fact found several enhancements and aggravating circumstances true, defendant received an aggregate 18-year sentence.  Defendant now seeks reversal of the judgment on the sole ground that the trial court erroneously denied his attorney's objection to the prosecutor's use of a peremptory challenge to remove from the jury panel a young college student of Southeast Asian descent.  We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND[1]

On December 22, 2020, Carlos A. (victim) was sitting in his vehicle in the City of Antioch, eating lunch. Defendant approached the victim's vehicle from behind; opened the driver's door; pointed a gun at the victim; and demanded his money, keys, and phone. When defendant briefly placed the gun in his pocket and stepped backward, the victim tried to flee. However, defendant pushed or fell into the victim, causing him to fall and sustain injuries. Defendant then drove off in the victim's vehicle. The victim called 911.

Several hours later, a San Francisco police officer spotted the stolen vehicle. The officer activated his patrol lights and attempted to effectuate a stop. Defendant sped away in the stolen vehicle, leading police on a high-speed chase. After committing several traffic violations, defendant crashed into a tree and was arrested. The victim later identified defendant as the individual who carjacked him.

In 2016, defendant pleaded guilty to two felony charges. This plea was based on evidence that defendant robbed Noel I., threatened him with what he said was a gun, and battered him for refusing to hand over a phone.

## DISCUSSION

The only issue on appeal is whether the trial court erred in overruling defense counsel's objection to the prosecutor's use of a peremptory challenge to remove a prospective juror (Juror 47) from the jury panel. The law is not in dispute.

---

[1] Because defendant raises one legal issue on appeal relating to the jury selection process, an abridged recitation of the factual and procedural background of this case suffices.

## I. *Legal Standards.*

Code of Civil Procedure section 231.7[2] prohibits a party from using a peremptory challenge "on the basis of [a] prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation," or "perceived membership . . . in any of those groups." (§ 231.7, subd. (a).) The statute addresses purposeful discrimination and implicit unconscious bias in the jury selection process and, to that end, must " 'be broadly construed' " with the aim of eliminating both concerns. (*People v. Uriostegui* (2024) 101 Cal.App.5th 271, 277–278, 281 (*Uriostegui*).)

When, as here, a defendant challenges a prosecutor's use of a peremptory challenge under section 231.7, the prosecutor must "state the reasons the peremptory challenge has been exercised." (§ 231.7, subd. (c).) The trial court must then evaluate "the reasons given to justify the peremptory challenge in light of the totality of the circumstances," considering "only the reasons actually given" and not any "other possible justifications . . . ." (*Id.*, subd. (d)(1).) If the court finds "a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, . . . or perceived membership in any of those groups, as a factor in the use of the peremptory challenge, then the objection shall be sustained," and the court's reasoning must be stated on the record. (*Ibid.*) A " 'substantial likelihood' " means "more than a mere possibility but less than a standard of more likely that not." (*Id.*, subd. (d)(2)(B).) An "objectively reasonable person" means someone who is "aware that unconscious bias [and] purposeful discrimination, have resulted in the unfair exclusion of potential jurors . . . ." (*Id.*, subd. (d)(2)(A).)

---

[2] Unless otherwise stated, all statutory citations herein are to the Code of Civil Procedure.

Section 231.7 also delineates several presumptively invalid reasons for a peremptory challenge. A party relying on a presumptively invalid reason must "show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race" or other prohibited factor "and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case . . . ." (§ 231.7, subd. (e).) This clear and convincing standard is met, and the presumption of invalidity is overcome, if "the factfinder . . . determine[s] that it is highly probable that the reasons given . . . are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case." (*Id.*, subd. (f).)

"Once the court has determined that the party seeking to exercise the peremptory challenge has overcome the presumption of invalidity as to a stated reason, the court may consider that stated reason in the section 231.7, subdivision (d)(7) analysis as to whether it is substantially likely that a reasonable person would consider that race was a factor in the challenge." (*People v. Jimenez* (2024) 99 Cal.App.5th 534, 541 (*Jimenez*).)

We review de novo a trial court's decision to overrule an objection to a peremptory challenge, while upholding the court's express factual findings if supported by substantial evidence. (§ 231.7, subd. (j).) In conducting this review, we will not impute to the trial court any findings the trial court did not expressly state on the record. (*Ibid.*) Further, we "shall consider only reasons actually given under subdivision (c) and shall not speculate as to or consider reasons that were not given to explain" the party's exercise of the peremptory challenge. (*Ibid.*)

4

## II.    *Relevant Factual Record.*

During voir dire, the trial court advised that defendant was African-American and asked prospective jurors whether his race would give rise to bias in their decisionmaking.  Juror 47 shared:  "This might be the opposite of what you are expecting, but I have seen a lot of bias in the world like knowing that Mr. Kirkwood is African-American I would think that maybe there are other people who have biases.  For example, anyone testifying for or against him might have some biases and I would just say that I want to be very critical and I want to see if like any evidence might have some bias, as any personal biases.  That is about it."  "So I just think I could be extra critical from any evidence both sides just to see if there is any bias from anyone who is giving evidence."

The court asked Juror 47 for clarification:  "So, you're saying you are going to scrutinize any evidence despite where it comes from, from the People or from the defense, you are just going to scrutinize it and make sure there is no bias involved?"  Juror 47 responded, "Yes," confirming she did not have any bias for or against defendant.

Juror 47 described herself as a college student studying computer science at the University of California, Santa Cruz.  She had lived for the past eight years in Moraga with her family.  She was unsure of the nature of her father's employment, although she knew it related to finance.  She had never served on a jury and did not know anyone in law enforcement.  Finally, neither she nor anyone in her family had been the victim of a serious crime or possessed a firearm.

The prosecutor asked Juror 47 how she intended to evaluate the evidence for bias, to which she responded:  "I think just the biggest thing is that if like—I think that in away like to make sure that anyone who testifies

like any proof that they give is something that I would accept as factual evidence.  Like if someone just says like—I don't know, like in a case of—I guess if someone just says that something probably happened, I just want to make sure that they actually did that kind of stuff.  I want to make sure that everyone actually did see what they think they saw, et cetera." (*Sic.*) Juror 47 also confirmed that she would not require the prosecutor to prove that "bias has completely been neutralized from every piece of evidence and every witness" or "that every person who is a witness has had some sort of implicit bias training . . . ."

Under questioning from defense counsel, Juror 47 confirmed her basic understanding of the presumption of innocence, a defendant's right not to testify, the burden of proof, circumstantial evidence, and the deliberative process.  In response to a question about proving guilt beyond reasonable doubt, Juror 47 noted that she had "a whole class on this" relating to "mathematical logic."  Juror 47 also confirmed she could be "a very fair juror."

After the prosecution thanked and removed Juror 47, defendant objected under section 231.7 on the grounds that she was or could be perceived as being of Southeast Asian descent.  The prosecutor provided several race-neutral reasons for removing Juror 47.  In the trial court's words, the prosecutor was concerned that Juror 47 lacked "life experience," since she had lived in Moraga with her parents for eight years, did not know any police officers, and had not been a crime victim.  The court further distilled the prosecutor was concerned that Juror 47 was a college student at the University of California, Santa Cruz, and, as such, would be "greatly influenced by college courses that [the prosecutor] believes would be left leaning and that juror would be nervous to convict.  And would be—have difficulty applying the facts."

6

The trial court, before ruling, pointed out the prosecutor had identified the juror's residence in Moraga as being an issue, which was a presumptively invalid reason for removal under section 231.7, subdivision (e)(4).[3] Thus, the trial court applied stricter scrutiny, ultimately finding based on clear and convincing evidence that an objectively reasonable person would view the prosecutor's reasoning as unrelated to Juror 47's membership in a particular ethnic group or race. Accordingly, the court overruled the defense objection.

## III. *Analysis.*

Defendant contends that, once the prosecution identified a presumptively invalid reason for excusing Juror 47 (to wit, her residential neighborhood), the prosecution failed to prove by clear and convincing evidence that the stated reasons bore on Juror 47's ability to be fair and impartial, as required under section 231.7, subdivision (f).

In so arguing, defendant relies on *Uriostegui*. There, the reviewing court held the trial court erred in denying an objection to the prosecutor's removal of a juror with a "Spanish surname" for "lack of life experience" based on the juror's unemployment and timid demeanor. According to the reviewing court, the prosecutor's stated reasons were presumptively invalid and not rebutted by a proper showing that said reasons were unrelated to the juror's perceived membership in a protected group or bore on her ability to be fair and impartial. (*Uriostegui, supra*, 101 Cal.App.5th at pp. 275, 280–281.) *Uriostegui* reasoned: "To allow a party to bury presumptively invalid reasons under an overarching facially neutral reason, such as 'lack of life experience,' without the required findings under section 231.7, subdivision (f), would

---

[3] The prosecutor clarified, "I'm just more applying the number of descriptions that I had on my . . . notes, that [Juror 47] lived with their parents in Moraga for eight years."

7

render section 231.7, subdivision (e) ineffective." (*Id.* at p. 280.) We agree with this holding; however, it is inapposite.

Here, contrary to in *Uriostegui*, defendant makes no showing that the prosecutor attempted to assert "presumptively invalid reasons under an overarching facially neutral reason, such as 'lack of life experience' . . . ." (*Uriostegui, supra*, 101 Cal.App.5th at p. 280.) Of course, it is true "courts have recognized that a person's place of residence may serve as a proxy for race." (*People v. Howard* (2024) 104 Cal.App.5th 625, 655.) However, the prosecutor explained, without contradiction, that her concerns regarding Juror 47's residence had nothing to do with the racial makeup of Moraga and everything to do with the fact that the juror had lived at home with her family for the past eight years. And, in addition to having never lived on her own, Juror 47 was a full-time college student with no personal experience with law enforcement, being a crime victim, or being around firearms. Each of these facts supports the prosecutor's reasoning that Juror 47 lacked sufficient "life experience" to serve as a juror in a single-witness criminal case such as this. (See *People v. Sims* (1993) 5 Cal.4th 405, 429–430 [valid race-neutral reasons supported peremptory challenges to a "youthful college student with insufficient maturity to accept the responsibility involved in serving on a death-penalty case" and a juror who was "very young and appeared immature"].)

Adding to the prosecutor's concerns about Juror 47 were Juror 47's comments that she learned "all" about the concept of proving guilt beyond a reasonable doubt in a "mathematical logic" course in college. According to the prosecutor, these comments, together with Juror 47's other comments that she would be "extra critical" of evidence to avoid the influence of implicit bias, caused the prosecution to worry that Juror 47 "would be greatly

8

influenced by college courses," "nervous to convict," and "have difficulty applying the facts." Such race-neutral concerns are also valid reasons for excusing a juror. (See *People v. Clark* (2011) 52 Cal.4th 856, 907 ["the record shows race-neutral reasons for excusing S.B., who reported on her questionnaire that she had taken college courses in psychology, and expressed the view during voir dire questioning that someone who commits murder must have 'something wrong with them in their mind' "]; *People v. Jones* (2013) 57 Cal.4th 899, 918–919 [juror's presumed " 'liberal tendencies,' " based on her involvement with environmental organizations, were a legitimate reason for a peremptory challenge].)

Collectively, the above identified facts support the trial court's finding that it was highly probable that an objectively reasonable person would have viewed the reasons given by the prosecutor as unrelated to Juror 47's race or ethnicity and, instead, related to Juror 47's individual attributes such as her ability to be fair and impartial. (§ 231.7, subd. (f); *People v. Jones, supra*, 57 Cal.4th at p. 917 [" ' "[E]ven a 'trivial' reason, if genuine and neutral, will suffice." [Citation.] A prospective juror may be excused based upon facial expressions, gestures, hunches, and even for arbitrary or idiosyncratic reasons' "].)

Two recent cases confirm our conclusion. In *People v. Gonzalez* (2024) 104 Cal.App.5th 1, 17 (*Gonzalez*), the trial court overruled a defense objection to the prosecutor's use of a peremptory challenge to remove a Latino prospective juror who stated he could follow the court's instructions yet expressed frustration with law enforcement's handling of a relative's murder case and doubt as to whether that experience would influence his decisions as a juror. Under section 231.7, subdivision (e), the juror's negative experience with law enforcement was a presumptively invalid reason for excusal, and,

9

thus, the court applied a clear and convincing standard in ruling on defense counsel's objection. (*Gonzalez*, at p. 16.) The reviewing court agreed the prosecutor's showing overcame any presumption that the peremptory challenge was used for an invalid reason: "In view of [the juror's] multiple uncertain and noncommittal responses regarding impartiality, the trial court properly found it highly probable the prosecutor's challenge was unrelated to conscious or unconscious bias and was instead specific to [the juror] and bore on his ability to be fair and impartial. In other words, the clear and convincing standard was satisfied." (*Id.* at pp. 17–18.)

In *Jimenez, supra*, 99 Cal.App.5th 534, the trial court likewise found clear and convincing evidence that a peremptory challenge was unrelated to conscious or unconscious bias when a prospective juror repeatedly stated she would have difficulty setting aside her bias against law enforcement officers to fairly consider their testimony. Similar to Juror 47, a juror identified as Latina stated, " 'I will always follow the law. . . . However, I see sometimes the law is not—it's depending on the color of your skin.' " (*Id.* at p. 541.) While the juror insisted she could "still be fair and follow the law," she also acknowledged, " '[I]t would be difficult. I'm not saying I couldn't do it. I also think . . . implicit bias is definitely a thing that I could do without knowing I did it.' " (*Ibid.*) The reviewing court held, based on this record, that "[a]n objectively reasonable person would view the prosecutor's challenge of Juror Number 8 due to her feelings on law enforcement as related to her ability to be fair based on her repeated acknowledgement that she would have difficulty setting aside her bias and being fair." (*Id.* at p. 544.)

Here, as in *Jimenez* and *Gonzalez*, the prosecution successfully demonstrated that its reasons for exercising a peremptory challenge against Juror 47 bore on her ability to be a fair and impartial juror and were

unrelated to her race or ethnicity. As discussed *ante*, the prosecutor's legitimate, race-neutral concerns included whether Juror 47 lacked sufficient life experience to responsibly exercise her role on a criminal jury and whether she would examine the evidence based on what she learned in her college course on "mathematical logic" rather than based on the court's instructions. (*People v. Sims, supra*, 5 Cal.4th at pp. 429–430; *People v. Clark, supra*, 52 Cal.4th at p. 907.)

We have further considered the totality of relevant circumstances in this case and found no other basis for inferring the prosecutor challenged Juror 47 because of her presumed race or ethnicity. (*Jimenez, supra*, 99 Cal.App.5th at p. 541 [when a prosecutor's reasons for excusing a juror are not presumptively invalid, the court must consider whether under the totality of the circumstances it is substantially likely a reasonable person would consider that race or ethnicity was a factor]; § 231.7, subd. (d)(1).) The prosecutor thoroughly questioned Juror 47 about her possible bias and her ability to follow the law. There is no evidence the prosecutor used peremptory challenges disproportionately against persons of Southeast Asian descent. (§ 231.7, subd. (d)(3)(C) & (D).) Lastly, there is no evidence suggesting the prosecutor's reasons for using the peremptory challenge were associated with Juror 47's race or ethnicity or were unsupported by Juror 47's actual responses to the attorneys' and court's questions. (*Id.*, subd. (d)(3)(E), (F) & (G).)

Accordingly, for all the reasons stated, we hold the trial court did not err in overruling defendant's objection to the prosecutor's exercise of a peremptory challenge against Juror 47.

11

# DISPOSITION

The judgment is affirmed.

Jackson, P. J.

WE CONCUR:

Burns, J.
Chou, J.